## Josiah Hughes vs. Samuel Jackson.

A case was continued under an *agreement* that it should be struck off at the next term, if not tried, and judgment for the defendant for costs. Subsequently to the next term, the plaintiff had leave to *amend*, and the defendant *pleaded* to the amended *nar*, and the case was carried on to judgment, without notice taken of the agreement. Held:

That the proceedings subsequent to the agreement constituted a *waiver*, with the concurrence of the court, of all advantage conferred upon the defendant by the agreement.

Where the court below refused to consider reasons for a new trial because not filed within the time required by the *rules* of court, such decision cannot be reviewed on appeal.

Where a court has established rules for its government, and that of suitors, there exists no discretion in the court to dispense at pleasure with such rules, or to innovate on established practice.

There are but two cases in which, in a court of law in this State, a *negro* suffers a disqualification because of the *presumption* arising from his color, the one where he is offered as a witness in a case where a white person is interested, the other where the question is freedom *vel non*.

A free negro suing in our courts is sufficiently described by the word *"negro,"* for it notifies the adversary party of the fact of color, and affords him an opportunity of pleading the disability of slavery, if it exists.

Appeal from the Circuit Court for Dorchester county.

*Trespass q. c. f.* for breaking and entering the plaintiff's messuage or dwelling-house, and taking and carrying away his children, brought on the 10th of March 1851, by the appellee against the appellant and another, who died before trial. In the writ, declaration and proceedings the plaintiff is described as a *"negro,"* and in the original *nar*, which was in trespass *vi et armis* for an assault and battery, the defendants are described as *"free negroes."*

The case, after plea of *non cul* and issue, was continued from term to term till October term 1853, when it was continued under an agreement "to be struck off at the next April term of this court, if not tried, and judgment to defendant for costs." It was then continued, by regular continuances, till July 1854, when the plaintiff asked and obtained leave to *amend* his declaration. The case was then continued till

Hughes *vs.* Jackson.

January 1855, when the *amended nar* was filed, charging the defendants with breaking and entering the plaintiff's messuage or dwelling-house, and taking and carrying away, and converting to their use his property, to wit, his two children of the value of $1000. The case was then continued till the 22nd of April 1856, when the defendants pleaded *non cul* to the amended declaration, upon which issue was joined. The record then shows that, on the 24th of the same month, after the jury was sworn to try the case, the defendants made a motion to dismiss, which was overruled, and a verdict rendered in favor of the plaintiff, on the 26th of the same month, for $750 damages.

On the day the verdict was rendered, the defendant moved for a *new trial*, and on the third day thereafter filed as reasons therefor that the verdict was against law, evidence, and the instructions of the court, and that the damages were excessive. On the fourth day after the verdict, the defendant also moved in *arrest of judgment*, "for reasons apparent on the face of the papers and pleadings." Afterwards, on the 13th of June, the defendant filed an additional reason, accompanied by several affidavits, in support of his motion for a new trial, upon the ground of newly discovered evidence.

The court (BRICE J. GOLDSBOROUGH, Special Judge,) overruled both motions, and filed an opinion stating that "in over ruling the motion for a new trial, the court refused to consider the reasons filed as of the 13th of June 1856, because they were not filed within the time required by the 22nd rule of said court, which is as follows." The rule is then set out in the opinion of the court below as stated in the opinion of this court. From this ruling upon the reasons aforesaid, and from the decision of the court upon the motion in arrest, the defendant appealed.

The cause was argued before LE GRAND, C. J., TUCK and BARTOL, J.

*Elias Griswold* for the appellant:

1st. A court has no power to allow a plaintiff to amend his *nar* and declare anew in direct violation of an *agreement* en-

tered on the record at a previous term, "that the case should be struck off," if not tried at a term intermediate the agreement and the motion to amend, and a subsequent pleading of "*not guilty*" to the amended *nar*, does not *cure* this irregularity. The record shows that a motion was made to *dismiss the case*, and such a motion is in accordance with the act of 1825, ch. 117, (9 *Gill*, 248, *Cushwa vs. Cushwa; Ibid.*, 269, *Newcomer vs. Keedy*,) and as the overruling of this motion was not a final decision of the case, an appeal could not *then* have been taken. 7 *Gill*, 366, *Welch vs. Davis. Ibid.*, 33, *Wheeler vs. The State.* 7 *G. & J.*, 109, *Boteler vs. The State.* 3 *Gill*, 246, *Baldwin, use of Owens, vs. Wright, et al.* 3 *Md. Rep.*, 326, *Bridendolph vs. Zellers.*

2nd. The courts had no power to grant amendments from one form of action to another, till the act of 1852, ch. 177, which does not apply to any case *then commenced.* This irregularity of amending from *nar vi et armis* to *q. c. f.*, could not be taken advantage of by *demurrer*, for the new *nar*, unlike the first, was in accordance with the *writ*, and not, therefore, demurrable. The error could only be taken advantage of by motion to dismiss, and this motion was available after as well as before the plea of *non cul*, because the right to amend is in the discretion of the court, and the changing from one form of action to another, was in accordance with the writ. The defendant must plead, and avail himself of the irregularity in granting the amendment contrary to solemn agreement, and the irregularity in amending from one form of action to another, by his motion to dismiss, and by motion in arrest of judgment, which goes to the whole record. 4 *G. & J.*, 416, *Charlotte Hall School vs. Greenwell. Ev. Pr.*, 332.

3rd. A *slave* having no civil rights, cannot, in Maryland, sue or be sued in an action of trespass *q. c. f.*, (4 *H. & J.*, 547, *Wicks vs. Chew;* 5 *H. & J.*, 190, *Hall vs. Mullin;* 9 *G. & J.*, 19, *Bland vs. Negro Dowling;* 4 *Gill*, 249, *Peters vs. Van Lear;*) and the court must *presume* one described in an original writ and all the proceedings in a case as a "*negro*," to be a *slave.* 6 *G. & J.*, 136, *Burke vs. Negro Joe.* 4 *H. & McH.*, 295, *Mahoney vs. Ashton.* If he was described as

Hughes vs. Jackson.

a "*free negro*," a plea to the merits would acquiesce in his description of himself, and throw upon the defendant the burthen of denying his freedom and right, but in the absence of any description except "*negro*," he is presumed to be a slave, and the whole action and proceedings are null and void. The distinction attempted to be set up, that a negro is presumed to be a slave only when he is held and claimed to be such, or only in petitions for freedom, is inconsistent with the law of nations, our statute law, and the decisions of our courts, as well as the position of the race in the domestic relation recognised in slave States. The necessary corrollary from the position is, that negroes are presumed to be free; i. e., have civil rights, except when they are held and claimed as slaves, or except in petitions for freedom. If this be so, what will you do with the 22nd sec. of the act of 1715, ch. 44, which declares "that *all negroes* and other slaves already imported or hereafter to be imported into this province, and all children now born or hereafter to be born of such *negroes* and *slaves*, shall be slaves during their natural life?" What will you do with the principles asserted in the case of *Anderson vs. Garrett*, 9 *Gill*, 128, where the negro, Rebecca, continually resided in Baltimore, with her children, for eighteen years, reputed as a free woman, and acting as such, making contracts, &c., and yet the court says, that negroes going at large and acting as free for any length of time, will not *per se* be a sufficient foundation to presume a deed? Where and what was the presumption in their case all the time they acted as free? Was it in abeyance, or did not the presumption of slavery *arise* till the master claimed them? Suppose Rebecca had brought suit as a "*negro*," not alleging her freedom, during these eighteen years, against a third party, could not the defendant have avoided the suit by *allegation* and *proof* of her slavery, without any holding and claim at all by her master? Then the *presumption* or *the fact* of slavery does not depend on the holding and claim of the master. But the defendant need not *allege* or *prove* slavery. The *presumption* and the fact is, she is a slave as "all *negroes* and other slaves," and their children by statute are, and the going at large and acting

in all respects as free, and reputed as free, does not help them. If she had sued as "*free negro*," pleading to her *nar* might admit her description of herself, though it has been decided in Maryland that suing negroes, treating them as if they had civil rights, does *not admit* their freedom, or, at least, their being made parties does not prevent their being sold as slaves. 7 *G. & J.*, 96, *Allein vs. Sharp*. The reverse would certainly hold that pleading to their complaints, would not admit their freedom or give them civil rights. Further, if the doctrine holds that negroes are presumed free, except when held and claimed as slaves, or in petitions for freedom, what will you do with the law as elucidated in this same case of *Anderson vs. Garrett*, that in Maryland the law recognises but two modes of manumission, by "*deed*" and by "*will*" duly executed? Will you presume such deeds and wills to exist, without their production? Sometimes—but when? Only when there is parol proof of twenty years or upwards going at large, with pregnant circumstances otherwise of freedom. But going at large, acting as free, reputed as free, abandonment by master, are no sufficient foundation for such a presumption, much less, in the absence of all proof of freedom, will the suing as a *negro* raise a presumption of freedom. Besides all this, the presumption that they are free, except when held and claimed as slaves, or in petitions for freedom, raises an exceptional rule very unjust to them, and in favor of the master. When they most need the presumption it is gone. The only just and true rule is to regard them as nature and revealed religion, and our laws, regard them at all times, and as we regard children before the age of twenty-one, as having no civil rights, dependent, needing protection, guidance and a master. And until, in the one case, the age of twenty-one is reached, and in the other, until by deed or will they are manumitted, the law justly and humanely regards them, and presumes them to be what they are, children and slaves. The law does not commit the folly and injustice of presuming negroes free, except when the presumption is some benefit to them in petitions for freedom. Justice, the institution of slavery, or the master, asks no such presumption when the right of the master is asserted, unless the pre-

Hughes *vs.* Jackson.

sumption rests on the broad and proper principle that they are always considered slaves by their natures, their capabilities, their position among their superiors, by the law of the land, and by divine arrangement and revealed law, their unfitness for civil rights, their need of pupilage, protection and guidance.

4th. It is no doubt good law that a defendant, before he can avail himself of the *disability* of a plaintiff to sue, must do so by plea in abatement. This is so when a party has any *status* as a person or a citizen, not where the presumption of law is, that they have no civil rights. It becomes a question of jurisdiction, and want of jurisdiction may appear in the record without any plea in abatement. This is ably elucidated in the opinion of Chief Justice Taney in the *Dred Scott case*. Besides, the right to sue must appear *affirmatively*, but in this case the term *negro* makes the contrary appear. This view is clearly held in the case most relied on by the appellee, 5 *H. & J.*, 130, *Shivers vs. Wilson*, where the court say, while recognizing the doctrine that a defendant must avail himself of the disability of a plaintiff to sue by plea in abatement, "if the act of 1795, ch. 56," (of attachments,) "comprehends the case at bar, no exceptions to the plaintiff's disability was available, except by *plea in abatement;* if, on the contrary, that act extends not to the case, the plaintiff had no right to recover, and the decision against him was correct." So here, if slaves, negroes, those presumed to be slaves, are comprehended among those having a right to sue in this State, no exception to their disability is available, except by plea in abatement. If, on the contrary, no law extends to them civil rights, the plaintiff in this case had no right to sue. For these reasons our motion to dismiss should have prevailed.

5th. The discretion vested in the courts to grant new trials, is not a capricious, but a sound, legal discretion, to the proper exercise of which the party claiming it is entitled, and from which he cannot be properly debarred by any rule that is a mere creature of the court. This appeal, in so far as it relates to this point, is not from the refusal to grant a new trial, but from the legal effect and application of the rule of the court below, and this is a proper ground of appeal. 11 *G. & J.*, 92,

*Dunbar vs. Conway.* Though there is no doubt courts are bound by their own rules, and when violated to the *injury* of parties, a remedy exists by appeal, yet where no injury would result, they may be waived, in the discretion of the court. The rule in question, moreover, carried to the extent of refusing to consider an additional reason filed for a new trial before the argument of the motion, because not filed within the four days, is inconsistent with the due exercise of the discretion vested in courts to grant new trials, and subverts the ends of justice. In the case of *Union Bank vs. Ridgely,* 1 *H. & G.,* 404, the question being, whether a plea of *non est factum* could be received after a plea of *general performance,* directly in the teeth of a rule of court declaring "that no incompatible plea shall be received," the court citing the act of 1809, ch. 153, says: "The discretion vested in the courts by that act is not a capricious, but a sound, legal discretion to the proper exercise of which the party claiming it is entitled, and from which he cannot be debarred by any rule which is the mere creature of the court." The discretion to grant a new trial, although not statutory, in no respect differs in character from that given by this act. It is a power, the offspring of the inherent authority of the courts; a discretion, but nevertheless a sound, legal discretion. And although a court may, for convenience, or to prevent vexatious delay, order that such motions and the reasons therefor shall be filed by a certain day, yet such rule, the mere creature of the court, cannot override the great ends of justice, and debar a party from the full exercise of the sound, legal discretion of the court upon all the reasons filed before argument, when the *motion was in time.* Some of the reasons being filed in time, and the additional reasons appearing from the records and affidavits not to have been known to the party at the time of filing the first, such a narrow construction is without warrant, even of the language of the rule, much more inconsistent with the due exercise of the court's discretion, and subversive of justice and a fair trial of the merits of the case. In *Carroll vs. Barber,* 7 *H. & J.,* 454, where the application was alone to *relax* a rule of court, and not involving a *construction* of the rule, the Court of Ap-

peals refused to relax but upon the grounds, 1st, that the proceeding appealed from was interlocutory and not final, and 2nd, that no *just cause* was shown. The language of the court clearly evinces that had the appeal had *merits*, they would have reviewed it differently. In the case under argument the circumstances are shown, by proof, why the reasons were not sooner filed, and the ends of justice require a relaxation of the rule, if indeed its language compasses at all the exclusion of any additional reasons. The case of *Wall vs Wall*, 2 *H. & G.*, 79, affirms the *right* of appeal in this case, and the decision there that the plea would not be received because not in by the rule day, is not against us here, because in that case *no plea* was in in time; and it was a plea of limitations not to the merits, and not *amendable*. Had any plea been in in time, which was to the merits and amendable, it must have stood, and might have been withdrawn and a new plea filed. Here the motion and some of the reasons were in time, and any additional reasons before argument are not excluded by the terms of the rule. In *Gist vs. Drakely*, 2 *Gill*, 330, the court, in deciding that the court below had a right to enforce its own rule excluding testimony after questions of law were raised, put that decision upon the ground that it did not appear that the testimony was out of the reach of the defendant, or was afterwards discovered. Here this meritorious ground appears, and also the *cause* why the additional reasons were not filed sooner. The court below seemed to think it had no discretion to dispense with the rule, but the case cited shows that it had that discretion.

6th. Upon the motion in arrest of judgment, all the objections apparent in the record avail to reverse the court below, and the refusal to arrest is the subject of appeal. On such appeals the appellate court will look to the whole record, notwithstanding the act of 1825, ch. 117. 4 *G. & J.*, 416, *Charlotte Hall School vs. Greenwell. Ev. Pr.*, 332.

*James Wallace* and *Chas. F. Goldsborough* for the appellee:

1st. It was not necessary to aver in the declaration that the

appellee was a *"free negro."* The law of Maryland does not presume under *all* circumstances that a negro is a slave. In all cases where he is held and claimed *as* a slave, and in all petitions for freedom the courts have decided, that he is presumed to *be* a slave, and the *onus probandi* is upon him to make out his freedom, as in the case of *Burke vs. Negro Joe,* 6 *G. & J.,* 141, and *Mahony vs. Ashton,* 4 *H. & McH.,* 305, but the courts have never decided that in other cases all negroes should be regarded as slaves. The opinion, that all negroes held and claimed as slaves were such, was founded upon the acts of 1663, ch. 30, and 1715, ch. 44, declaring that all *negro* and other *slaves,* imported or *to be* imported, and their children should be slaves *durante vita,* but those acts especially that of 1715, does not declare all negroes *free at that time* or before, nor their children slaves. It says, all negroes and *other slaves,* now imported or hereafter to be imported, &c. It was not the design to make and declare all negroes, whether free or otherwise, then in the State, slaves, but simply that all negro *slaves,* and *other slaves,* should be regarded as slaves for *life.* This will appear by reference to the 5th and 26th sections, where free negroes are especially recognised. Previous to this act an idea prevailed, that baptizing worked a manumission, as appears by the 23rd section, and it was to remove any doubts upon the subject that the act was passed. The first decision upon the point after the passage of the act of 1715, was the case of *Mahoney vs. Ashton,* where the court say, the words of the statute do not operate to make those slaves who were free at the time of the passage of the act, but simply that all negroes held as *slaves* were such, and cast the *onus probandi* upon such as petitioned for their freedom. This doctrine was not questioned until the decision in the case of *Burke vs. Negro Joe.* In that case the court say: "a negro in this State is presumed to be a slave, and on an application for freedom must prove he is descended from a free ancestor, or that he has been manumitted by deed or will." When carefully examined, this decision will not be found to be in conflict with the case of *Mahoney vs. Ashton,* or the prevailing opinion of the profession since that date. The court

say, a negro in this State is presumed to be a slave, &c.  So
he is, all admit, in cases where he is held and claimed *as* a
slave, or as in such a case as was then before the court, but
the court say no more; they do not decide that he is presumed
to be a slave in all cases and under all circumstances.   Ne-
groes going at large and acting as free, are regarded as free
men, and presumed to be such until claimed as the property
of some one.   Such was the opinion and common law of the
State before the aforesaid acts of Assembly.   In certain cases
they voted, bore arms, gave evidence in courts, and performed
other acts now confined to the white man.   They are now re-
strained from voting, bearing arms, and giving evidence, by
statutes of 1717, ch. 13, 1846, ch. 27, 1783, ch. 23, 1796,
ch. 67, sec. 5, but the presumptions are the same as before
these acts.   The various cases cited by the appellant, are not
in conflict with this position.   They were all cases where the
parties were claimed as the property of some one.

2nd.  Has a negro any *status* as a person or citizen, and can
he sue in the courts of this State?   If he be a slave he can
only sue for his freedom: he has no other right to appear in
court: he can have no property to defend or wrong to redress.
If he be free he is still not a citizen nor is he an alien.   He
occupies an anomalous position, having more rights than a
stranger, yet not the same as an heir.   He can sue and be
sued in our courts, hold property and enjoy the fullest protec-
tion of our laws.   In the *Dred Scott case*, the Supreme Court
did not decide that a negro from his color was presumed to
be a slave, but that no one who was of African descent could
be a citizen of the United States, and sue in the United States'
courts.   He might still be a citizen of a State, and as such a
free man, but still not entitled to reap the benefits of citizen-
ship of the United States.   No point in that case conflicts with
the position of the appellee.

3rd.  But if the argument of the appellant be true, that all
negroes are presumed to be slaves, and as such are incompe-
tent to sue, unless it be alleged that they are free, the appellee
insists, that it is now too late to rely upon it.   The objection
cannot be sustained upon a motion in arrest of judgment.

The defendant should have pleaded the disability to sue in abatement. The court below being one of general jurisdiction, the personal disability should have been taken advantage of in that manner; it can be done in no other way. *5 H. & J.*, 130, *Shivers vs. Wilson.* The defendant, however, never denied the ability of the plaintiff, either by any pleading or by evidence adduced on the trial. He has by his proceedings admitted his competency, and it is now too late to object: he is estopped. The description of the plaintiff is nothing more than ambiguous, and if the court can be asked to presume that the term *"negro"* implies a slave, and disqualifies the plaintiff from bringing or sustaining his action, certainly after verdict the plaintiff can ask the court to presume, that the defendant admitted his competency, or that every thing was proven on the trial, that was necessary to make the case out fully and completely. *5 H. & J.*, 130. *7 Gill*, 211, *Patterson vs. Crookshanks.* · *4 G. & J.*, 418, *Charlotte Hall School vs. Greenwell.* 1 *Gill*, 165, *Baden, et al., vs. State, use of Clark.* If the averment was defective and insufficient, and the defendant pleads to it and goes to trial, and the verdict be against him, he cannot avail himself of the defect, for it will be cured, and every legal intendment will be made to sustain the verdict. *3 H. & J.*, 383, *Walsh vs. Gilmor.* If the averment that the plaintiff is a *negro*, be ambiguous and uncertain whether he was a free man or a slave, the defect or ambiguity has been cured by verdict, and the court should presume, that the ambiguity and uncertainty was removed at the trial, and proof necessary to sustain the issues was produced, and sustain the verdict by every fair legal intendment. 11 *G. & J.*, 472, *Ragan vs. Gaither.*

4th. Though there was an agreement that the case should be struck off if not tried at a certain time, yet when the time arrived no motion was made to strike the case from the docket, nor an application for judgment of non-suit, but the defendant permitted the plaintiff to amend his *nar*, and consented to a continuance of the cause from term to term, and then knowingly and willingly without objection, pleaded to the amend-ed *nar* long after the agreement expired. These proceed-

ings, and joining issue and proceeding to trial, abrogated the agreement, and the court below was justified in presuming it had been rescinded or had been waived by the defendant. What else could be inferred from this strange conduct? If he intended to insist upon the contract, why did he not do it when the time arrived? Why did he plead? Why did he swear a jury? After the jury were sworn, it appears that he made a motion to dismiss the case, but the record does not inform the court upon what ground the motion was based, whether for the violation of the agreement or for some other cause. If such *laches* were tolerated, great wrong would be perpetrated, and parties involved unnecessarily in large bills of costs, in bringing a cause to trial to be surprised by the revival of an old agreement that had long been abandoned by both parties. The agreement could have no more binding effect than a rule of court, and if the party failed to avail himself of the benefit of the rule, but suffered the other party after the term limited to file his amended *nar*, and then pleaded to it and went to trial, it would clearly be considered too late to enforce the rule, the court would consider that he had waived the rule. So we think in the case of an agreement, and that the court below was right in overruling the objection.

5th. In this case there was no amendment from one cause of action to another, as the appellant has argued. The writ was issued in *trespass quare clausum fregit.* The original *nar* set forth a case of *trespass vi et armis.* The error was perceived, and, upon application, the court permitted the plaintiff to amend, and the amended *nar* was filed, in accordance with the writ, for a *trespass quare clausum fregit.* So it is manifest there was no amendment from one class of action to another, and no force in this objection of the appellant.

6th. The court did not err in refusing a new trial upon any of the grounds stated by the appellant, and the refusal to grant this motion is not a ground of appeal. The whole matter is left to the sound discretion of the *nisi prius* court. 5 *H. & J.*, 174, *Anderson vs. The State.* 2 *H. & G.*, 79, *Wall vs. Wall.* Not only is the whole subject of new trials left to the discretion of the courts, but they are authorised to enact rules

to govern the practice in such cases, and such rules are, while in force, a law unto the courts as well as suitors, and if the appellant failed to file his reasons within the time limited by the rule in question, the court was bound to exclude them, unless from peculiar circumstances it considered it proper to relax the rule, and the propriety of relaxing or not is left to the sound discretion of the court. But had the court relaxed the rule and considered the additional reason, it would not have been justified in granting a new trial, because no sufficient case was presented.

Le Grand, C. J., delivered the opinion of this court.

This case comes before this court on an appeal from the decision of the circuit court overruling a motion in arrest of judgment. The principal question which underlies the case is, whether a negro can maintain an action in this State, without first averring in his pleadings, and establishing by proof, his freedom; it being contended, that the presumption of slavery arising from color, applies *in every case,* and is not confined to those originating in a petition for freedom. There are other matters alluded to and insisted upon by the counsel for the appellant, but they are of minor importance. The first is, that the amended declaration does not conform to the writ. An examination of the pleadings will show this to be simply error in point of fact. It is true, however, that the declaration which was filed in the first instance did not agree with the writ, but this oversight was corrected by filing another declaration to which the defendant pleaded, and on which issue was joined and the case was tried. The writ was issued on the 10th day of March 1851; on the 18th day of October 1853, (there having been continuances,) the following agreement was entered into and made a part of the record:—"Continued upon the following agreement, to be struck off at the next April term of this court if not tried, and judgment to defendants for costs." Subsequently the plaintiff had leave to amend, and did amend his declaration, and to this amended declaration the defendant pleaded, and the case was carried on to judgment, without any notice being taken of the agreement to which we have referred.

This we consider a waiver, with the concurrence of the court, of all advantage conferred upon the defendant by the agreement. Had this not been the case the judgment for costs would have been entered. The subsequent proceedings are only reconcilable on the hypothesis of a waiver of the agreement. But, inasmuch as a motion in arrest of judgment brings up the whole record, it is contended, that the court ought to have granted a new trial. The court overruled, as its opinion shows, the motion for a new trial, and refused to consider the reasons filed as of the 13th of June 1856, because these reasons were not filed within the time specified by the rules of court. The 22nd rule of the court is as follows: "Ordered, that all motions in arrest of judgment and for a new trial shall be made, and reasons filed within four days next after trial, if the court shall continue so long, if not then, during the sitting of the court." Where a court has established rules for its government, and that of suitors, there exists no discretion in the court to dispense at pleasure with their rules, or to innovate on established practice. *Wall's Ex'rs, vs. Wall,* 2 *H. & G.,* 79. *Benson vs. Davis,* 6 *H. & J.,* 272. *Abercombie vs. Riddle,* 3 *Md. Ch. Dec.,* 320. This being so, then the appellant has nothing to complain of, or which this court can correct on this appeal, and as a consequence, the judgment must be affirmed. But the question to which we adverted in the commencement of this opinion, and which arises on the motion in arrest, is one of great practical importance, and we will decide it so as to remove all doubt in regard to it for the future. We know of but two cases in which, in a court of law in this State, a negro suffers a disqualification because of the presumption arising from his color. The one is, where he is adduced as a witness in a case in which any *white* person is interested. Our act of Assembly of 1846, ch. 27, renders him incompetent as a witness in any case in which a *white* person is interested; the old act of 1717, ch 13, confined it to cases in which a *christian* white person was concerned. The other case is, where the question is freedom *vel non;* there his color raises a presumption against him, and casts upon him the *onus* of proof of his freedom. From the earliest history of the colony, free negroes

have been allowed to sue in our courts and to hold property, both real and personal, and at one time, they having the necessary qualifications, were permitted to exercise the elective franchise. To deny to them the right of suing and being sued, would be in point of fact to deprive them of the means of defending their possessions, and this, too, without subserving any good purpose to the rest of the community. Neither the policy of our law, nor the well-being of this part of our population, demands the principle of exclusion contended for by the appellant, on the contrary, they are both opposed to it, and so long as free negroes remain in our midst a wholesome system induces incentives to thrift and respectability, and none more effective could be suggested than the protection of their earnings. The words, *free negro*, are not essential in the averments of the pleadings except in the case of a petition for freedom; in all others the word "*negro*" is sufficiently full in its description; it notifies the adversary party of the fact of color, and thus affords him an opportunity to show the condition of slavery, if such be the case, by pleading that disability.

*Judgment affirmed.*

(Decided June 15th, 1858.)

