(Decided 12th February, 1880.)

STEPHEN M. GIBBONS, Garnishee *vs.* TALLMADGE F. CHERRY.

*Practice in Cases of Attachments—Rules of Court—Powers of Judges as to Conduct of Business in their Courts—Construction of Art. 4, sec. 33, of the Constitution.*

C. on the 30th May, 1867, issued an attachment on warrant out of the Court of Common Pleas upon certain promissory notes of a defendant. The writ was returned by the sheriff on the same day, laid in the hands of G. On the same day the garnishee G. appeared by counsel, and was laid under rule to plead. No plea was filed, and no further steps were taken in the case by either side until the May

Gibbons, Garn. *vs.* Cherry.

·term, 1878, and the cause in the meanwhile had been placed on the stet docket of the Court. In the early part of that term, and at ·different times during the term the Judge gave notice, that after he had completed the trial of cases on the trial docket, he would call the cases on the stet docket, and accordingly on the 10th July, 1878, began the call of cases on that docket, and on reaching this case, entered a judgment of condemnation by default for want of a plea. On motion, made nearly a year thereafter, by G. to have judgment stricken out on the ground that it was irregularly entered, and was obtained by surprise, it was HELD:

1st. That this was a case not provided for by any rule of the Supreme Bench, and that the due and proper administration of justice fully justified, if it did not imperatively require the action taken by the Judge.

2nd. That there was no ground whatever for the allegation of surprise.

'The Constitution has not invested the Supreme Bench with the sole and exclusive power of making rules for the conduct of business in the Courts of Baltimore City. The Court of Common Pleas existing when the Constitution of 1867 was adopted, and that instrument having recognized and continued it and defined its jurisdiction, it cannot be supposed that it was the intention of those who framed or adopted the Constitution that by the provision contained in Art. 4, sec. 33, giving power to the Supreme Bench to make needful rules, the Judges of this and other Courts of Baltimore City, would be rendered powerless to act, to try causes and to administer justice, in case the Supreme Bench neglected to adopt rules for their guidance; or if such rules when adopted, failed to meet all possible contingencies, that the Judges should have no power to supply the deficiency, and adopt from time to time such orders and take such measures not inconsistent with the rules in force, as in their judgment would secure the trial or final disposition of all cases brought ·and pending in their respective Courts.

APPEAL from the Court of Common Pleas.

The case is stated in the opinion of the Court.

The cause was argued before BARTOL, C. J., MILLER, ALVEY, and IRVING, J.

10 ·                          v. 53.

*Frederick C. Cook*, for the appellant,

Cited the *Constitution*, *Art.* 4, *sec.* 33; *Rule* 29 *of the Supreme Bench*; *Cooley on Constitutional Limitations*, 78–79; *Owens vs. Ranstead*, 22 *Ill.*, 161; *Hughes vs. Jackson*, 12 *Md.*, 463; *State vs. Buchanan*, 5 *H. & J.*, 331; *Wall, Ex'r vs. Wall*, 2 *H. & G.*, 79; *Quynn vs. Carroll's Adm'r*, 22 *Md.*, 295; *Burlington, &c. R. R. vs. Monchard*, 5 *Iowa*, 468; *Craig vs. Wroth*, 47 *Md.*, 281.

*D. S. Briscoe*, for the appellee,

Cited the *Code*, *Art.* 29, *sec.* 1; *Peters vs. League*, 13 *Md.*, 58; *Anderson, Garn. vs. Graff*, 41 *Md.*, 608; *Abell, Garn. vs. Simon*, 49 *Md.*, 318; *Sarlouis vs. Fireman's Insurance Co.*, 45 *Md.*, 241; *Henck vs. Todhunter*, 7 *H. & J.*, 278.

MILLER, J., delivered the opinion of the Court.

This appeal is from the refusal of the Court of Common Pleas, to strike out a judgment of condemnation rendered against the appellant as garnishee of Hugh Crolly. The only grounds for the motion relied on here, or of which any proof was offered in the Court below, are that the judgment was irregularly entered, and was obtained by surprise.

The record shows that the appellee Cherry, on the 30th of May, 1867, issued an attachment on warrant in the usual form, upon certain promissory notes of Crolly for $220. The writ was returned by the sheriff on the same day, "laid in the hands of Stephen M. Gibbons, at one o'clock P. M., in presence of John Lloyd, and garnishee summoned." On the same day the garnishee appeared by counsel, and was laid under a rule to plead. No plea was filed, and no further steps were taken in the case by either side until the May term, 1878, and the cause in the meantime had been placed on the stet docket of the Court. In the early part of that term, and at different times

during the term, the Judge *gave notice* that after he had completed the trial of cases on the trial docket, he would call the cases on the stet docket, and accordingly on the 10th of July, 1878, began the call of cases on that docket, and on reaching this case entered a judgment of condemnation by default for want of a plea. Now it is insisted that the notice thus given by the Judge, respecting the call and disposition of cases on the stet docket, was *ultra vires*, in conflict with the rule of Court on that subject, and consequently the disposition of the case, and the entry of the judgment in this mode was irregular, and for that reason the judgment ought to have been stricken out.

By the Rules adopted by the Supreme Bench of Baltimore City, for the conduct of business in the Superior Court, the Common Pleas, and the City Court, it is provided that the clerk at each term shall prepare a trial docket, and a stet docket, the latter of which shall contain all cases that have been twice called for trial and continued without affidavit, and not because of an outstanding commission; and in respect to cases on this docket, there is a rule which is set out in the record, to the effect, that if the assignment of cases on the trial docket for the day shall be disposed of before the usual hour of adjournment, the Court will proceed to hear any cause on the stet docket, in which counsel on both sides shall be in Court ready to proceed to trial, and when two or more cases are in such condition, they shall be tried in numerical order. It is then provided that counsel in any cause upon the stet docket, may compel the opposite party to proceed to trial upon the first opportunity presented under the operation of the foregoing rules, by giving to such party five days' notice in writing of his intention to call said case for trial on the first opportunity which shall occur after the expiration of said notice, and when thus called, it shall stand for trial as if it had been called in

the regular  assignment  for  the  day ;  but a case  brought
forward  under  such  notice  must  be  tried  or  disposed of
when the  opportunity  for trial  occurs, or  the party  giving
the notice  will lose the  benefit  thereof,  and  the same case
can only  be  brought forward  again  under the  exigency of
a new notice.

It  is  conceded  these  are  the  only  rules  the  Supreme
Bench  has  ever  adopted  in reference to  a stet docket, and
the  appellant's  counsel  has  contended  that  it  is  beyond
the  power  of  any  one  of  the  Judges  of  these  several
Courts,  to make  any  rule,  or  adopt any  order,  or take any
steps for the  trial or disposition of cases that have once been
placed  on  this  docket,  except  in the mode  prescribed  by
this rule.   This  argument is  founded on the idea  that the
Constitution has invested the Supreme Bench  with the *sole
and  exclusive*  power  of  making  rules  regulating  the
conduct of  business  in  these  Courts.   It is  true  that the
Constitution in establishing  the jurisdiction,  and  prescrib-
ing the powers and duties of the  Supreme  Bench has de-
clared (*Art.* 4, *sec.* 33,) that it  shall have  power, and  it
shall  be its  duty  "to make  all  needful rules and  regula-
tions  for the  conduct  of  business  in  each  of said  Courts,
during the  session thereof, and  in vacation, or in chambers,
before any  of said  Judges."   But we  do  not  ascribe to
this provision any such  potency as  counsel have  contended
for.   The  Court  of Common  Pleas was  one of the  existing
tribunals  for  the  administration  of  justice  in  the  City of
Baltimore  when  the  Constitution  of  1867  was  adopted,
and  that  instrument  recognized,  and  continued  it,  and
defined its jurisdiction.   We cannot  suppose it was  the
intention of those who framed or adopted the Constitution,
that  by  the  provision  cited,  the  Judges  of  this and  other
Courts of Baltimore City  would  be  rendered  powerless to
act, to  try  causes, and  to  administer  justice,  in  case  the
Supreme  Bench neglected to adopt rules for their guidance;
or  if such  rules when  adopted  failed  to meet all possible

emergencies, that the Judges should have no power to supply the deficiency, and adopt from time to time such orders and take such measures, not inconsistent with the rules in force, as in their judgment would secure the trial, or final disposition of all cases brought and pending in their respective Courts.    The rule in question fails to provide for any regular call of the cases on the stet docket. Under its operation it might happen that none of these cases could be tried for many terms or perhaps for several years, while those not pressed for trial under the five days' notice are left to accumulate and remain forever open and undisposed of.    Such a continuous and always increasing accumulation of open and untried causes on the dockets of the Courts would not only be an innovation upon the settled practice of the State but would probably result in most serious inconvenience and mischief.    If, then, a Judge finds this to be the condition of his stet docket, and no existing rule has made provision for such a difficulty, we are clearly of opinion he not only had the power, but it was his duty to fix a time for calling and disposing of all the cases on that docket. Doubtless it would have been better if a rule had been adopted, requiring such calls to be made at stated and regular intervals, but in the absence of any such rule it was clearly competent for the Judge himself to fix as he did in this instance, some convenient time therefor. Ample and repeated notice of the time was given in open Court and we cannot regard the judgments rendered, or dispositions duly made of cases under such a call as either unlawful or irregular.    It is not a case where a Court has arbitrarily suspended or dispensed with its own rules. It is well settled law that a Court has no discretion to dispense at pleasure with rules it has adopted for its government and that of suitors, or to innovate upon established practice.    *Hughes vs. Jackson,* 12 *Md.,* 463.    But it is a case not provided for by any rule, and where the due

and proper administration of justice fully justified, if it did not imperatively require the action taken by the Judge.

There is no ground whatever for the allegation of surprise. The garnishee was not only duly summoned, but appeared to the suit by counsel, and so far as the record shows, was represented by counsel during all the time the case remained on the stet docket. He appears, moreover, to have been grossly negligent from the beginning. After summons and appearance by counsel, he failed to interpose any defence to the action, and he never attempted to press the case to trial under the rule. Filing or entering the simple plea of *nulla bona* would have prevented the judgment of which he now complains. All this may have been the fault and neglect of his attorney, and if so it affords good ground of complaint, and a right of action against him, but furnishes no reason why the Court should deprive the plaintiff of the benefit of his judgment. Not one of the numerous decisions of this Court on motions to strike out judgments, supplies a precedent for granting relief under such circumstances. It is true, he alleged as reasons for the motion that he was never duly summoned, and that the entry of the appearance of the attorney was unwarranted and unauthorized, but he offered no proof in support of these reasons, and they were abandoned in argument in the Court below, and have not been, as indeed they could not be, relied on here. Again, there is nothing to show he did not know of the judgment, as soon as it was rendered, and yet the motion to strike it out was not made until nearly a year thereafter. This delay is wholly unexplained.

We find no cause of reversal, and the judgment overruling the motion must be affirmed.

*Judgment affirmed.*

(Decided 12th February, 1880.)