# THE WESTERN MARYLAND RAILROAD COMPANY *vs.* LAWRENCE FRANK KEHOE.

*Negligence—Accident at Railway Crossing—Conflicting Evidence—Instructions.*

It is for the jury to determine the credibility of testimony; and if the evidence offered by the plaintiff in an action is such that if believed by the jury they may lawfully find for the plaintiff, the case cannot be withdrawn from their consideration, although the plaintiff's evidence is contradicted in material particulars by that of the defendant.

In an action of negligence against a railway company, the plaintiff's evidence was to the effect that while driving at night along a country road he slackened his speed upon approaching a railway crossing and looked and listened, but heard nothing and saw nothing; that the night was dark and there was no light visible upon any car or engine and no bell was rung or other signal given; that a freight car which was drifting down one of the tracks, without a light in front, struck plaintiff's buggy as he was driving across and threw him out between the tracks, rendering him unconscious, and while in this position another car quickly followed which passed over plaintiff's leg; that the place where the plaintiff was lying when so injured was within the limits of the road and a few feet from the plank crossing; that the brakeman in charge of the car which struck the buggy was at the time on the end of the car furthest away from plaintiff; that after this car had passed the brakeman discovered plaintiff lying between the tracks and cried out a warning to stop the other car, but that the same was not stopped in time. The evidence on the part of the defendant was that the night in question was not dark but moonlit; that while the cars were being shifted across the road the bell on the engine was being constantly rung; that any one approaching the track could clearly see the cars; that the plaintiff was intoxicated and drove rapidly upon the track without looking or listening. *Held,*

1st. That if the jury believed the plaintiff's evidence they had a right to infer from it, although contradicted by the evidence of the defendant, that the plaintiff was not guilty of contributory negligence in so attempting to cross the tracks, and that the injury was caused by defendant's negligence, and that after plaintiff was seen in a perilous position, the injury to him could have been avoided by the exercise of reasonable care.

2nd. That the defendant was not entitled to ask for an instruction that

the defendant's brakeman, in charge of the car which ran over the plaintiff, was not bound to anticipate the likelihood of plaintiff's lying on the track eight or ten feet beyond the crossing, and that it was not negligence for the brakeman not to have seen plaintiff, because such instruction does not leave to the jury to find whether plaintiff was on the track by reason of his own negligence or was thrown there by the negligent act of defendant's servant, nor whether he was actually seen there by defendant's servants in time to avoid the injury, there being evidence upon these questions which it was the duty of the jury to consider.

3rd. That instructions asked for by the defendant which assume the truth of the evidence offered on its behalf, and withdraw from the jury the consideration of the evidence adduced by the plaintiff were properly rejected.

Appeal from the Circuit Court for Harford County (WAT-TERS, J.) Those of the plaintiff's prayers which were granted at the trial are as follows :

*Plaintiff's 1st Prayer.*—If the jury find that the plaintiff, on the night of the accident, was proceeding to his home along the county road driving his horse and buggy, and that before attempting to cross the defendant's railroad he slowed up his horse to look and listen for trains on the railroad, and that he neither saw nor heard any cars or locomotive near the crossing or in motion, and that while attempting to cross the first or main track of defendant's road his buggy was struck by a car which had been detached from the engine and was running down that track by its own momentum and upon which no light was visible to the plaintiff, and that he was thereby thrown from his seat upon and between the rails of defendant's switch or second track, a few feet from the traveled way, where he lay stunned and unconscious, and was immediately thereafter run over and his leg crushed by cars of the defendant, which had been likewise detached and started into the switch at the time the other car was running down the main track ; and if the jury shall be of opinion, from all the circumstances, that the injury was caused by want of ordinary and proper care on the part of the defendant, its agents and servants, and without any fault of the plaintiff contributing thereto, then the plaintiff is entitled to recover.    (Granted).

*Plaintiff's 3rd Prayer.*—If the jury find that upon the night of the accident a burden train of defendant's left Baltimore about 7.18 P. M., and reached Howardville about 10 P. M., where the railroad crosses the county road at grade ; and that the bulk of the train was left on the main track some distance east of the crossing and the engine proceeded beyond the crossing to a switch, which it ran back upon and coupled to a number of cars standing on said switch, which it proceeded to haul westwardly beyond the switch, and from that point proceeded to throw the rear car on the main track and the others on the switch by the movement described by the witnesses ; and if they shall find that, while said engine and part of the train was west of the crossing, the plaintiff on his way home upon the county road approached the railroad, and that he paused or slowed up his horse to look and listen, and that he neither saw nor heard any cars near the crossing nor in motion, and that he thereupon attempted to cross and was suddenly struck by a car of the defendant's, on which no light was visible to the plaintiff, running against the right side of his buggy, as he was at the main track, and that he was thereby thrown from his seat upon and between the tracks of the switch, where he lay stunned and unconscious, and was immediately run over and crushed by the cars of the defendant moving along said switch ; and if the jury shall be of opinion, under all the circumstances of the case, that the injury complained of resulted from a want of ordinary and proper care on the part of the defendant, its agents and servants, in the management of its cars, and without any fault of the plaintiff contributing thereto, then the plaintiff is entitled to recover. (Granted).

*Plaintiff's 4th Prayer.*—If the jury find for the plaintiff, they are to consider, in estimating damages, the health and condition of the plaintiff before the injuries complained of, as compared with his present condition in consequence of said injury ; and whether said injury is in its nature permanent, also the physical and mental suffering to which he has

been subjected by reason of said injury, and they are to allow him such damages as in the opinion of the jury will be a fair and just compensation for the injury which the plaintiff has sustained. (Granted).

And the defendant offered the twelve following prayers :

*Defendant's 1st Prayer.*—That it was the duty of the plaintiff, before attempting to drive across defendant's tracks, to look and listen for approaching cars, and either to stop his vehicle entirely or so far reduce its speed as to enable him to obtain the full use of his sight and hearing, unimpeded by the movement or noise of said vehicle, and if they find that the plaintiff failed to do this, but drove rapidly across the track, and that his vehicle was struck by one of the defendant's cars and himself knocked out and run over by the cars moving on the side track, then the plaintiff is not entitled to recover upon the issues joined in this case, even though the jury find further that the cars were being moved without the showing of any light or the ringing of any bell to give warning of their approach to the crossing. (Granted).

*Defendant's 2nd Prayer.*—To entitle the plaintiff to recover in this case, the jury must be satisfied from the evidence not only that the defendant company was guilty of negligence in the handling and moving of its cars at the crossing where the accident complained of occurred, but that said negligence was the direct cause of the accident, and even though they should find that the defendant was guilty of such negligence, still the plaintiff is not entitled to recover upon the issues joined in this case, if they believe that, notwithstanding said negligence, the accident would not have occurred if the plaintiff himself had used due care and caution in driving across the track. By negligence is meant a failure to exercise ordinary care, that is to say, such care as ordinarily prudent persons would exercise under such circumstances. (Granted).

*Defendant's 3rd Prayer.*—That even though the jury shall believe that plaintiff's buggy was struck by the car upon

which the witness, O'Boy, was riding, in the manner testified to by that witness; if before being thus struck the buggy had been driven violently down the road by the plaintiff in the manner described by the witnesses, Drehr, Baker, Smith, Ryland and Sykes, and while thus driven had crashed into the signal or danger-post, had its left wheel torn off and then dashed across the track in front of said car, receiving as it passed a blow from said car which knocked the plaintiff out upon the track, where he was run over by the cars coming along down the siding, the plaintiff is not entitled to recover in this case and their verdict should be for the defendant.    (Granted).

*Defendant's 4th Prayer.*—Defendant prays the Court to instruct the jury that defendant's brakeman, Keefer, who had charge of the cars which ran over the plaintiff, was not bound to anticipate the likelihood or possibility of the plaintiff or of any one lying on the tracks or between the tracks, eight or ten feet beyond the crossing, or lying on or between the rails upon the crossing; and it was not negligence for said brakeman or any other employee of the company not to have looked for or seen the plaintiff lying at that point. (Rejected).

*Defendant's 5th Prayer.*—It was the duty of the plaintiff under the circumstances of this case, as shown in the whole testimony, to stop, look and listen before attempting to drive across defendant's tracks, and inasmuch, according to the undisputed evidence in this case, he drove across the tracks without stopping, he is not entitled to recover in this case, and the verdict of the jury must be for the defendant.    (Rejected).

*Defendant's 6th Prayer.*—If the jury find from the evidence that on the evening when the accident complained of in this case occurred, the plaintiff was riding in a buggy; that he and his two brothers (the latter in another buggy), were driving along the Reisterstown turnpike in the manner testified to by the witnesses, Ryland and Sykes; that they all then drove violently down the hill to the crossing at Howardville, where, by reason of his unduly rapid and

careless driving, plaintiff's horse swerved towards the left out of the road and brought the left hind wheel of the buggy into contact with the signal post mentioned in the evidence, tearing the rim and spokes from the wheel, causing the side of the buggy to fall and throwing the plaintiff out upon the defendant's tracks, where he lay unconscious and unseen, until he was run over by the defendant's cars as they were being drifted back upon said side track, then the plaintiff is not entitled to recover in this case, their verdict should be for the defendant, upon the issues joined. (Granted).

*Defendant's 7th Prayer.*—If the jury find that the Howardville crossing had not been found a dangerous crossing for persons using ordinary care in travelling over it; that no accident had happened there in twenty years; that persons approaching the crossing along the county road had full view of the track in both directions and could see any cars thereon for several hundred yards either way; that no demand or request had ever been made of the Railroad Company to equip said crossing with electric bells or safety gates, or to have a flagman or light there, then the company is not chargeable with negligence for not having provided such bells, gates or light or flagman.   (Granted).

*Defendant's 8th Prayer.*—That according to the uncontradicted evidence the plaintiff by his own negligence contributed directly to cause the accident complained of; that he had offered no evidence legally sufficient to entitle him to recover in this case, and that upon the pleadings and evidence their verdict must be for the defendant.   (Rejected).

*Defendant's 9th Prayer.*—The plaintiff, in order to establish his case, having proven that as he was approaching the railroad tracks and when about twenty feet from the main track a box car was moving slowly on said main track, across the county road, easterly, towards the city of Baltimore, and that before his buggy had reached said main track the car had passed half way across the road in front of him, and was still moving slowly in the same direction, and that there

was light enough to enable a person on the rear end of the box car, a distance of some thirty-five feet, to see a buggy as it approached the crossing, and the plaintiff having testified that he slowed down his horse to a walk when twenty feet from the track, and no proof having been offered that there was anything to prevent the plaintiff from seeing the box car as it was moving on the track, not more than twenty feet away from him, it was the duty of the plaintiff, before attempting to cross said railroad tracks under such circumstances, to stop his buggy and wait until the box car upon which the witness O'Boy was riding, had passed over the crossing, and inasmuch as it appears from the facts in the case, as proven by the plaintiff, that if his buggy was struck by said car, it was struck while swerving from the middle of the road and then passing over the tracks directly in front and around the end of the approaching car, the plaintiff is not entitled to recover in this case, and the verdict of the jury must be for the defendant. (Rejected).

*Defendant's 10th Prayer.*—If the jury shall find that during all the time that the cars were being shifted as described in the testimony, the bell of the locomotive was being rung to warn persons approaching the crossing of the presence of the cars, and that this bell could be heard by persons driving along the county road from a point several hundred yards away all the way to the crossing, and that the light afforded by the moon, which was nearly two hours high, was sufficient to enable such persons to plainly see the box car upon which the witness O'Boy was riding as soon as they came abreast of the front of Baker's house, and for some distance before reaching said house, then the plaintiff is not entitled to recover in this case, and the verdict of the jury must be for the defendant. (Refused).

*Defendant's 11th Prayer.*—That the Railroad Company was not required by law to equip the Howardville crossing with electric bells or safety gates, or to have a flagman or light there, and cannot be held guilty of negligence for not having done so. (Granted).

*Defendant's 12th Prayer.*—That if the jury find from the evidence that the time the accident happened the moon was still nearly two hours high, and the light amply sufficient to enable any one approaching Howardville crossing along the county road to plainly see so large an object as the box car upon which the witness O'Boy was riding, as well as other cars near the crossing at that time, from a considerable distance and in time, by the exercise of due care, to have avoided a collision with said car, then the plaintiff is not entitled to recover in this case, and their verdict must be for the defendant.   (Refused).

. The jury returned a verdict for the plaintiff for $11,000.

The cause was argued before McSherry, C. J., Bryan, Briscoe, Roberts and Boyd, JJ.

*Charles Marshall* and *J. Markham Marshall,* for the appellant.

*D. G. McIntosh* and *Randolph Barton, Jr.* (with whom were `Stevenson A. Williams* and *Redmond C. Stewart* on the brief), for the appellee.

Bryan, J., delivered the opinion of the Court.

This is the second appeal in this case.   The opinion of the Court in the former appeal is reported in 83 Md. 434. The decision then delivered, as a matter of course, settled the law on the questions involved, for all subsequent litigation in the case.

The evidence in some particulars is different from that given at the former trial.   We will refer to such portions of it as it is necessary to consider for the determination of the questions now presented.   The plaintiff testified that he lived near Howardville, in Baltimore County ; that on the thirtieth day of July, eighteen hundred and ninety-five, in company with two younger brothers, after driving to several places of resort, at some of which he drank considerably ; on his way home he drove along the Seven Mile

Lane to the place where it crosses the Western Maryland Railroad; that his two brothers were twenty or thirty yards ahead of him; that he slowed down to a walk, looked and listened, but did not hear or see anything; that the night was pretty dark; he saw no car and did not hear any alarm-bell or anything of the sort; that as you approach the crossing, a large store-house and cedar tree would strike your eye to the right before you reach the railroad track; that beyond the railroad to the right towards Sudbrook Park there is a growth of wood; that any cars on the track would be between him and the shade of the wood; that he started his horse across the track and she (a mare) made a jump; he tried to stop her, and something struck his buggy on the right-hand side; that was the last thing he remembered until next day, when he found himself in bed at his father's house with his leg cut off; that the mare which he was driving was gentle, a lady could drive her; that he had been drinking beer and whiskey; that he had frequently drunk more, and it had never made him drunk; on cross-examination, he said that he judged by the sound that his brothers were twenty or thirty yards ahead, that he could not see them.   Thomas Kehoe, one of the plaintiff's brothers, testified that when they reached the railroad, it was half-past nine o'clock at night or ten; that he and his brother Bart were in one buggy and the plaintiff in another; that they (Bart and himself) stopped at the railroad, but did not see or hear anything, and they went across; that the night was very dark; that at the railroad they heard no bell nor whistle, saw no light displayed, noticed none in any of the houses, nor any flagman, nor any light on the lamp-post; that he knew the plaintiff's horse; it was gentle.   On cross-examination, he said it was rather dark; that the moon had been shining, but it was about down and it was rather cloudy.   O'Boy testified that he was one of the crew of a freight train of the Western Maryland Railroad on the night of the accident, and was on the west end of the car as it was drifting on the main track

towards the train standing east of the crossing when the car struck a man's buggy right on the crossing, a little on the east side ; that the car was half over when the buggy was struck ; that he saw a horse's head, and saw something fall out that he took to be a cushion ; that he did not hear any bell ringing ; that when the car drifted down until it was against the train, he got off, and went back and found the plaintiff lying on the track with his face up further away east of the crossing than he expected to find him, he seemed to be closer to the planking when he fell ; that when he saw him he cried out, "Stop them cars, for God's sake;" that the car was west of the crossing and that he tried to pull the plaintiff away, but could not, and was himself struck on the shoulder; that plaintiff was run over before he could get the plaintiff off; that he is still in the employ-ment of the railroad ; that it was a dark night and he was on the end of the car farther away from the crossing and the light was with him and when the buggy was struck the light was sitting on the coupling block in the centre of the car ; it was a box car and higher than he could reach from where he stood, eight or nine feet.   On cross-examination, he testified that the length of his car was thirty feet, one of the small Western Maryland cars ; that he saw the first buggy go by at a rapid rate ; he was a car and a-half away when he heard a buggy, and he tried to wind the brake chain, but it would not work, and the car ran on the cross-ing, and he saw a horse's head on the south side of the car ; that he had heard the sound of a horse's hoofs, but did not hear anything else ; that he had to look around and see the length of a car when he saw the horse's head ; that the horse was going at a good gait, not walking ; that the plain-tiff fell about five feet east of the crossing towards Balti-more ; that we (meaning brakemen) can stop three loaded cars with a couple of good brakes in forty or fifty feet; that he could stop a single empty car much quicker ; that when he went to Kehoe the car which ran over him was a car-length off; that he found a broken flask by the side of

the track and there was a stain of liquor, which he supposed to be whiskey. On re-examination he testified that if the buggy had come straight down the county road, it would have struck the car. Sapp testified that he took beer with plaintiff about nine o'clock on the night of the accident, and that the plaintiff was then " all right; " that the plank-crossing between the railroad tracks was not the full width of the county road, and that there was a space of eight feet on each side of the plank-crossing within the limits of the county road. There was other testimony tending to show that the county road was thirty feet wide, and that when plaintiff was run over he was lying within its limits ; there was also other testimony that the plaintiff's horse was gentle. Several witnesses testified to the good character of the plaintiff for sobriety ; and two physicians who attended him testified that in their opinion he could not have been intoxicated at the time of the accident. Atwood testified that he was a surveyor and civil engineer, and that he had made a plat representing the railroad station ; he described the measurements on the plat. On cross-examination he testified that a person stopping on the county road twenty or thirty feet from the crossing going in the direction which the plaintiff was driving, could see towards the west (the opposite direction from Baltimore) about five hundred feet ; that there was nothing to prevent him from seeing the track, or anything on the track from that distance. He did not say that he could see that distance on the night of the accident, at the time it occurred ; and he seems to have known nothing about the accident, or whether the night was light or dark.

This testimony was before the jury, and it rested exclusively in their judgment whether they would believe it or not. If the plaintiff slackened his speed on approaching the crossing, and looked and listened ; and heard nothing and saw nothing ; if the night was very dark, and there was no light in such a position as would enable the plaintiff to see the approaching car when he looked, and if no bell was rung, or other signal given, he certainly was guilty of no

negligence in attempting to cross the railroad track. And if under these circumstances he was struck by the car, and thrown in an unconscious condition to the ground, and run over by another car under the circumstances described by O'Boy, the defendant was certainly responsible for the injury inflicted upon him. The evidence on these points was very materially contradicted by the testimony on the part of the defendant. But most undoubtedly the case could not be withdrawn from the jury on that account. The Court cannot decide between opposing witnesses. The jury must determine questions of fact, and as said in *Charleston Insurance Co.* v. *Corner*, 2 Gill, 427, "no action of the Court should control the exercise of their admitted right to weigh the credibility of evidence." If the jury believed the evidence, it was competent for them to draw the inferences which we have mentioned. We shall refer to this matter again in another portion of this opinion ; but we may as well say that it is no part of our purpose to make an abstract of the evidence, but merely to refer to such portions of it as will illustrate the prayers in the case.

The evidence for the defendant stated that an extra freight train running without scheduled time, coming from Baltimore, arrived at the Howardville station about ten o'clock on the night in question ; that the train stopped about a car's length on the east, or Baltimore side of the crossing ; that the engine was cut off, and it pulled up beyond the crossing, and was then backed into a siding on which five cars were standing ; that the conductor of the train took the first and last car and threw one of these cars on the main track and let it run down towards the train which remained standing to the east of the crossing ; this was a box car ; that three gondola cars were put back on the side track. Wildersin, the conductor, testified that as he came down the *siding* towards the crossing with the engine and one car he heard the brakeman cry out that a man was run over ; that he passed over the crossing and found him ; that he was lying on his back about eight feet on the Baltimore side, very

close to the clearance-post; that he was on the siding, with
one leg over the siding track towards the main track; that
he, the witness, was about one hundred and twenty-five feet
from the crossing when he heard a team cross over; heard
the team coming at a rapid rate and looked around and the
team went over, and he made a shift and cut O'Boy off with
the car, and when he got down there witness heard the
rumbling of another team; that he heard a crack, and he
rode the car down and coupled it up, and brakeman Keefer
cut the three cars off and rode them in on the siding, and
that when the witness came down there was nothing to be
seen of the team; that he supposed from the way they were
rattling that the teams were driving at a gallop; that it was
a partly moonlight night; that there was a little moon, but
that witness could see plainly from where he was at the
switchboard to front end of his train where he left it stand-
ing east of the crossing; that the brakeman who had
charge of the three cars which were running down the side
track had a light in his hand; that the brakeman, O'Boy,
who had charge of the car running down the main track
also had a light, a regular railroad lantern; that the bell
was ringing and the whistle sounded as the train approached
Howardville from Baltimore; that the cars as they were
shifted down the main track might have been moving three
or four miles an hour; that they were started from the
switch-post, which was a hundred and fifty feet from the
crossing; that when the plaintiff was picked up there was
a whiskey bottle lying beside him, the whiskey was running
down over the switch-plate; on cross-examination the wit-
ness stated that the bell was ringing while they were push-
ing out, but was not ringing while the locomotive was not
in motion; that Keefer could stop the gondola car at any
moment after he used his hands on the brake.    Dotterer
testified that he was a fireman on the freight train from Bal-
timore; that he was ringing his bell all the time the shift-
ing of the cars was going on; that there was light enough
for him to see the main portion of the train east of the

crossing, and there was nothing to prevent any one coming down the Seven Mile Lane from seeing the cars and engine on the main track and switch at the distance they were from the crossing. Norman testified that he was the engineer of the extra freight train ; that the box car ran down the main track at the rate of three or four miles an hour ; that after the box car had about reached the crossing they sent the three cars down the switch ; that the switch was one hundred and seventy-five feet from the crossing, and that he could see the train east of the crossing; that it was a tolerably fair night, and an object as large as a box car could be plainly seen at that distance ; that the moon might have been an hour and a-half high, or something like that ; that he did not think that the moon was down, that it may have been behind woods, that " it would be so from where we were " (in the words of the witness). Keefer, the brakeman, testified that he did not cut off his cars from the engine until O'Boy with the box car had passed the clearance-post below the crossing and he himself saw that the cars had passed the post; that the cars under his charge were gondola cars, one loaded with lime and two which were empty ; that he was standing between the loaded car and an empty car, with the empty car ahead of him and two behind him ; that any one coming down the public road who stopped within twenty feet of the crossing could have seen both the box car and the three cars in charge of the witness ; that the bell had been ringing, but did not know whether it rang all the time. On cross-examination he said, that he could have seen anything on the track ten feet ahead of the car ; that when he was standing between the first and second cars as he approached the crossing he was standing on the bumper and he set the lantern down on the bumper where his feet were. Baker, the station agent, testified that he lived about sixty feet from the crossing, on the north side of the railroad ; that as he was preparing for bed his attention was drawn to a noise like the running of horses and vehicles ; that after the buggies went past his window he

heard a crash.    He stated some particulars after the occurrence of the accident.    He stated also that the moon was shining with an occasional cloud ; the moon was possibly an hour and a-half or two hours high.    On cross-examination he said, that there was no provision for a light at the crossing ; that there was a lamp-post at the corner of his house ; that oil was provided for a lamp there which would throw light across to the platform ; it is used only until the last train, about nine o'clock, when it is put out ; he also stated that he saw the open gondola car passing down with lime in it ; that after he heard the crash he heard a voice cry out " Stop those cars ;" that he was unable to say whether the lime car was going down at the time.    Smith testified that he lived on the south side of the railroad ; that he saw an object on the side track and cars moving down the side track toward it ; he looked until the cars ran over it ; when he first saw the object the cars were fifteen or sixteen feet from it ; that he heard the cry, " Stop the cars," just before they ran over the object ; that he did not see who gave the call ; that there was then no one near the object on the track ; that if any one had been there he could not have failed to see it.    There was also evidence tending to show that the plaintiff's buggy ran against the danger-signal post; that any one could see the track either way for a long distance, and the cars on it, the only obstacles being Smith's house and Baker's house, both of which are a considerable distance " back from the track," as a witness expressed it ; that the plaintiff's horse was not gentle.    Norman testified that Smith's house was seventy-five or a hundred feet from the side track, on the south side of the railroad.

We have made citations from the evidence with perhaps unnecessary fullness, but we wished to show with distinctness the grounds which supported the hypothetical propositions stated in the different prayers.    There were other contradictions in the testimony, but we think that the various points in the exceptions are sufficiently covered by what we have stated.    Notwithstanding the contradictions and con-

trarieties in the evidence, it was competent for the jury to find that the freight train was not running on scheduled time ; that when the train supposed to be the last one had passed at about nine o'clock, the light at the corner of Baker's house had been put out; that when the plaintiff reached the railroad, he slowed up, looked and listened ; that the night was dark, and his view was obscured by the darkness and by the shadow of the woods ; that no bell was ringing at that time ; that the engine and cars were then not in motion; that the headlight of the engine was in an opposite direction from him ; that no light was visible on the cars which came down the main track and the siding ; that the plaintiff then proceeded to cross the track on the public road, and that while on the main track of the railroad he was struck by the freight car in charge of O'Boy, and thrown on the siding in a helpless condition at a point within the limits of the county road ; that this car had no light which was visible to the plaintiff; that the car started at a distance of one hundred and seventy-five feet from the crossing and came down at the rate of three or four miles an hour, and passed this distance in about half a minute ; that O'Boy was at the farther end of the car away from the crossing ; that the plaintiff had good reason to suppose that the passage over the track was free from danger, and that when after looking and listening he saw no indication of danger, his attention was naturally directed ahead of himself and buggy ; that his horse probably saw the car an instant before it struck the buggy and swerved away from it to the east ; that O'Boy gave no signal or notice of any kind as he ran over the crossing ; that he saw something fall from the buggy ; that after his car reached the train about a car's length east of the crossing, he returned and found the plaintiff lying on the track ; that he cried out, " Stop them cars, for God's sake ;" that when he went to Kehoe the cars coming down the switch were a car's length distant; that plaintiff was then in a helpless condition ; that O'Boy's cry to stop the cars was heard by

Baker at his house sixty feet distant, and by Smith seventy-five or a hundred feet distant on the south side of the railroad; that Keefer could have seen anything on the track ten feet ahead of the car, if he had looked; that he could have stopped the car at any moment; that he did not look at the siding ahead of him and that he had a lantern, but the light was not visible ahead of him and no bell was ringing on his cars; that his cars ran over the plaintiff and inflicted serious injury upon him; that when O'Boy heard the noise of a buggy, he tried to wind the brake-chain, but it would not work.    And the jury might have found that after the plaintiff was seen in a perilous position by O'Boy, the servants of the defendant could have prevented the accident by the exercise of reasonable care and diligence.    We are far from intimating that we should have drawn these inferences from the evidence, if it were within our duty to find the facts.    As a matter of course the jury might have drawn inferences the reverse of those which have been stated, and might have concluded that the plaintiff rushed recklessly and foolishly into danger.    But it was a question which it was their duty to decide.

We can now see how the Court below was required to decide on the prayers.    The defendant's fourth prayer was in these words:  " Defendant prays the Court to instruct the jury that defendant's brakeman, Keefer, who had charge of the cars which ran over the plaintiff, was not bound to anticipate the likelihood or possibility of the plaintiff or of any one lying on the tracks or between the tracks, eight or ten feet beyond the crossing, or lying on or between the rails upon the crossing; and it was not negligence for said brakeman or any other employee of the company not to have looked for or seen the plaintiff lying at that point."   The proposition contained in this prayer is absolute and unconditional.    It is not qualified by facts in evidence shewing, or tending to show how it occurred that the plaintiff was on the tracks at the time.    It does not state nor leave the jury to find whether the plaintiff was on the track unlaw-

fully or negligently, nor whether he was thrown there in a helpless condition by the negligent act of a servant of the defendant; nor whether he was actually seen there by one of the defendant's servants who was at the time engaged in the discharge of his regular duty. There was evidence bearing on all these questions which it was the duty of the jury to consider and pass on. Yet, notwithstanding any conclusion which the jury might draw respecting them, the prayer maintains that the defendant was not chargeable with negligence in regard to a failure to see the plaintiff lying on the track. This meant, of course, and the jury would so infer, that the plaintiff could not recover for injuries then and there inflicted upon him. It would have been an error to withdraw from the jury the evidence which we have mentioned; and the prayer was properly rejected. The fifth and eighth prayers of the defendant required the Court to decide that the plaintiff was shown by the undisputed evidence to be guilty of contributory negligence. We have sufficiently shown our opinion on this question. The defendant's ninth prayer was in these words : " The plaintiff, in order to establish his case, having proven that as he was approaching the railroad tracks and when about twenty feet from the main track a box car was moving slowly on said main track, across the county road, easterly, towards the city of Baltimore, and that before his buggy had reached said main track the car had passed half away across the road in front of him, and was still moving slowly in the same direction, and that there was light enough to enable a person on the rear end of the box car, a distance of some thirty-five feet, to see a buggy as it approached the crossing, and the plaintiff having testified that he slowed down his horse to a walk when twenty feet from the track, and no proof having been offered that there was anything to prevent the plaintiff from seeing the box car as it was moving on the track, not more than twenty feet away from him, it was the duty of the plaintiff, before attempting to cross said railroad tracks under such circumstances, to stop his buggy

and wait until the box car upon which the witness O'Boy
was riding had passed over the crossing, and inasmuch as
it appears from the facts in the case as proven by the plain-
tiff, that if his buggy was struck by said car, it was struck
while swerving from the middle of the road and then pass-
ing over the tracks directly in front and around the end of
the approaching car, the plaintiff is not entitled to recover
in this case, and the verdict of the jury must be for the de-
fendant." The prayer maintains that the Court could
decide that the facts stated in it were proved, and that
they were not for the consideration of the jury. We
have already stated the evidence offered by the plain-
tiff, and the inferences which the jury were authorized
to draw from it. It tended to show, among other things,
that he stopped at the railroad, and that he then could
see no indication of danger for the reasons mentioned, and
that he then started across the track, and that while he
was proceeding to cross he was struck by a car which had
started a hundred and seventy-five feet distant without a
light visible to him, and which passed over the space in
about half a minute. This prayer was properly rejected.
The tenth and twelfth prayers may be considered together.
They were as follows :   The tenth : "If the jury shall find
that during all the time that the cars were being shifted as
described in the testimony, the bell of the locomotive was
being rung to warn persons approaching the crossing of the
presence of the cars, and that this bell could be heard by
persons driving along the county road from a point several
hundred yards away all the way to the crossing, and that
the light afforded by the moon, which was nearly two hours
high, was sufficient to enable such persons to plainly see
the box car upon which the witness O'Boy was riding as
soon as they came abreast of the front of Baker's house,
and for some distance before reaching said house, then the
plaintiff is not entitled to recover in this case, and the ver-
dict of the jury must be for the defendant." The twelfth :
"That if the jury find from the evidence that the time the

accident happened the moon was still nearly two hours high, and the light amply sufficient to enable any one approaching Howardville crossing along the county road to plainly see so large an object as the box car upon which the witness, O'Boy, was riding, as well as other cars near the crossing at that time, from a considerable distance and in time, by the exercise of due care, to have avoided a collision with said car, then the plaintiff is not entitled to recover in this case, and their verdict must be for the defendant." Each of these prayers asserts that upon the finding of the facts enumerated in them, the verdict must be for the defendant. And this must be the result irrespective of the finding upon any other facts whatsoever. But the evidence could not be withdrawn from the jury which tended to show that the plaintiff was thrown on the track, within the limits of the county road, by the negligence of a servant of the defendant, and was seen there by said servant, and that after he was seen, there was time to avoid injuring him by the exertion of reasonable care on the part of defendant's servants. The jury had a right to find these facts, and if they did, the verdict ought to have been against the defendant. Consequently the prayers in question were properly rejected. We have considered the prayers granted in behalf of the plaintiff, and see no error in them.

The verdict and judgment were in favor of the plaintiff. The questions in the case are not free from difficulty, but we have given them our best consideration, and have found no error in the rulings of the Court below.

*Judgment affirmed.*

(Decided June 22nd, 1897).