# WASHINGTON & ROCKVILLE RAILWAY COMPANY AND WASHINGTON RAILWAY & ELECTRIC COMPANY

*vs.*

## MARY POLK SULLIVAN.

*Personal Injuries—Damages—Negligence of Railway Company—Injury to Pedestrian—Contributory Negligence—New Trial—Practice on Appeal—Federal Question.*

In an action for personal injuries, an instruction that if the jury find for plaintiff, in estimating the damages they are to consider her health and condition before the injury as compared with her present condition in consequence of such injuries, and whether they are in their nature permanent, and how far they are calculated to disable plaintiff from engaging in those business pursuits for which in the absence of such injuries she would have been qualified; and also the physical and mental suffering, if any, to which she has been subjected by reason of said injuries, was proper.                          p. 205

In an action against a suburban railway company for injuries to the plaintiff, who was struck by a car while walking across the track, *held* that the question of negligence and contributory negligence were for the jury, the evidence being conflicting as to whether it was dark at the time and whether the car had lights on it.                          pp. 205-209

In no case should the court take the question of negligence from the jury unless the conduct of the plaintiff relied upon as amounting in law to contributory negligence is established by clear and uncontradicted evidence, and when the nature of the act relied on to establish contributory negligence can only be determined by considering all the circumstances, it is within the province of the jury to pass upon it, and it is not for the court to determine its quality as a matter of law.          p. 209

If no exception was reserved at the trial to a question as to the form of the verdict, such question is not properly before the Court of Appeals.                          p. 211

The grant or refusal of a new trial is a matter within the discretion of the trial court, and its action thereon is not a subject for review. p. 211

That defendant company was organized under an Act of Congress does not make the question of its liability to plaintiff for the negligence of those operating the car of a subsidiary company a Federal question. p. 211

Where a rule of the trial court requires all motions in arrest of judgment to be made within three days after verdict, a motion not so made is properly refused. p. 211

*Decided March 16th, 1920.*

Appeal from the Circuit Court for Prince George's County (BEALL and CAMALIER, JJ.).

Statement No. 6, referred to in the opinion, was in part as follows:

"After the jury had returned its verdict counsel for defendant stated: 'We object to the verdict as rendered by the jury. The Court will note that the jury returned a verdict for "twenty thousand," but did not state as to twenty thousand what.' Counsel for defendant then objected that the clerk had no right to amend the verdict. The Court then stated: 'We will let the verdict stand.'

"The stenographer having closed his report and retired and the Court having no recollection of a formal exception having been taken, feel that it is proper to allow the above statement to be placed in the record at the instance of the counsel for the defendant, which is accordingly done this 15th day of November, 1919."

Plaintiff's first prayer was as follows:
"The plaintiff, by her counsel, prays the Court to instruct the jury that if they find for the plaintiff, in estimating the damages the jury are to consider the health and condition of the plaintiff before the injury complained of, as compared

with her present condition in consequence of such injuries, and whether the same are in their nature permanent, and how far they are calculated to disable plaintiff from engaging in those business pursuits for which in the absence of such injuries she would have been qualified; and also the physical and mental suffering, if any, to which she has been subjected by reason of said injuries, and the jury are to allow such damages as in their opinion will be fair and just compensation for the injuries suffered."

The cause was argued before BOYD, C. J., BRISCOE, BURKE, URNER and STOCKBRIDGE, JJ.; BURKE, J., by reason of his resignation, not participating in the decision.

*S. R. Bowen* and *George Weems Williams*, with whom were *Robert W. Wells* and *W. H. Talbott* on the brief, for the appellants.

*Robert B. Peter,* with whom were *M. Hampton Magruder* and *James K. Polk* on the brief, for the appellee.

BRISCOE, J., delivered the opinion of the Court.

The plaintiff brought those suits in the Circuit Court for Montgomery County on the 31st day of May, 1918, against the defendant companies to recover damages for personal injuries received by her, alleged to have been caused by the negligence of the defendants.

The cases were removed to the Circuit Court for Prince George's County for trial and, upon motion in that Court, they were consolidated and upon trial, before a jury, resulted in a verdict for the plaintiff for the sum of twenty thousand dollars ($20,000.00).

From a judgment entered on this verdict, the defendants have brought this appeal.

The questions for our consideration are presented by eight exceptions taken and reserved by the defendants in the course of the trial, on rulings of the Court upon the evidence, the

prayers and to the overruling of certain motions submitted by the appellants at the conclusion of the case.

The first, second and third exceptions relate to the rulings of the Court on the admissibility of evidence to establish the relationship and joint liability of the two companies for the injuries received by the plaintiff as alleged by the declarations in the case.

It was admitted, in the course of the trial, that the accident occurred upon the line of the Washington and Rockville Railway Company of Montgomery County, and the evidence objected to was admitted for the purpose of showing that the relationship existing between the defendant companies was such as to establish the joint liability of the Washington Railway and Electric Company, the other defendant in the case.

The question of the liability of these companies was passed upon by this Court, in the recent case of *Pugh* v. *Washington Railway and Electric Company,* in 134 Md. 196, under a similar state of facts, and for the reasons stated in that case, there was no error in the rulings of the Court on the first, second and third exceptions in this case.

The fourth and fifth exceptions relate to the Court's rulings on the prayers.

The plaintiff presented one prayer which was granted. The defendants offered eighteen prayers and of these, the first, second, third and fourth prayers were rejected. The plaintiff conceded and the Court granted the defendants' fifth to the eighteenth prayers, inclusive.

The plaintiff's first prayer was the usual damage prayer, presented in similar negligence cases, and was a proper prayer, under the facts of the case.

The defendants' first, second, third and fourth prayers were in the nature of a demurrer to the evidence and as the questions of negligence and contributory negligence were clearly questions for the jury, under the evidence in the case, these prayers were properly refused.

The facts set out in the record, and on which the rulings of the Court below are based, briefly stated, are these: The appellants operate an electric railway from the District of Columbia to Rockville, Maryland. The plaintiff resides near Friendship Heights, Maryland, and on the 26th of October, 1917, was a passenger on one of the defendants' cars from the District of Columbia to her home at Friendship Heights, Maryland. The appellants have two car tracks at Friendship Heights, one called the northbound track, running toward Rockville; and the other called the southbound track, running toward Georgetown, D. C.

The plaintiff testified that, when the car stopped at Friendship Heights, she got off on the east side of the northbound track and as she lived on the west side of the tracks, it was necessary for her to cross both tracks in order to reach her home; that before crossing she stopped and looked north, up the southbound track and saw no car coming, she proceeded to cross the southbound track, when and where she was struck. She also testified in substance that it was about 6 o'clock in the evening, and that the car that struck her had no lights on it, and the fender of the car was up. The street lights were all lighted.

The plaintiff testified in part as follows: That at the time of the accident she had on this occasion a very particular reason for being careful, and I thought of that reason and warned myself to be careful. I looked down—by "down" I mean toward Washington, and I saw the Rockville car and an automobile lighted coming. Then I looked up the track. I had a perfectly clear vision of the track, and I saw distinctly an automobile coming lighted, and no car; I saw nothing that showed that there was any car on the track. So I started to cross, and when I got in between the tracks I realized that the car had stopped just a few feet this way where the ground is very raised in the middle of the track. My ankle is more or less weak, and I hesitated just a second

whether I should walk back a little bit to the south, towards Georgetown, and cross there.

And just while I hesitated for a second—the Rockville car makes a very loud noise, and it clanged and made a whistle and blew, and that made me take immediate action. I again looked up the track and I saw the automobile coming very close, but I did not see any car, and I started across the track, and I was not more than maybe a couple of steps probably across when the automobile passed, and just as it passed, simultaneously, just the same minute, just as it went by me, I saw this car, and I said, "My God, a car without a light." I screamed then and I saw that I could not get out of the way; I was just too big to do any wild jumping. So I dropped my packages and just threw, tried to throw my coat over my head, and then it hit me. I thought I was knocked into eternity. There was just one thought that I had when I was hit, a kind of wonder—I thought it would strike me in my feet, but instead of that it hit me in my body, and I wondered where the fender was. I thought the fender would knock me down, but it hit me clean right in the body, 1 don't know where, but knocked me in the air. I don't know, but I think I was partially unconscious or entirely so when I hit the ground, for I had all sorts of wild visions. I thought I was dead. I thought certainly I was dead, and then I was brought back to partial consciousness by another blow that hit me right hard some place. I don't remember much after that. I was thrown on the Rockville track, and after that, I don't recall much.

The witness, Mamie Scott, testified that she saw the accident; that it was about 6 o'clock in the evening, that the street lights were lighted, and it was right dark, and that you would have to have a light to see plainly; that the car that struck the plaintiff did not have any lights on it, nor headlight, nor any light on the inside of the car, and that she did not hear any signal, no bell or whistle, as the car approached the station.

James Sullivan, a son of the plaintiff, testified that he saw the accident and was only a short distance from his mother, when she was struck by the car, there was no light on this car, but a light on the Rockville car coming from Georgetown and there were no signals by the car that struck his mother.

The witnesses Voight and Page testified that they were at the scene of the accident, and the car that struck the plaintiff had no lights on it and that it was dark, so much so, that one of the witnesses did not identify the motorman, and all the other cars had lights on them.

The testimony on the part of the defendants, relied upon to support their theory of the case, and the way the accident occurred, was in direct conflict with the testimony offered by the plaintiff.

Charles L. Sweeney, the motorman on the car, testified that he saw the plaintiff standing on the far side of the northbound track, and as he proceeded she started to cross the track; that she crossed the northbound track and stood in between the two tracks, and that he was then possibly about 65 or 70 feet from her; that he rang his bell and the lady looked up and looked at him, looked right at the car; that he kept his eyes on her because she was then in a place of safety; that he shut his power off and started drifting up the slight grade to Friendship Heights; that when he was within possibly about between six and ten feet, something like that, from plaintiff, she, without any warning whatever, stepped right over on the track, and he screamed; he immediately threw his brake in emergency and pulled his reverse bar; that he did not have time to put the controller on one point; that on those cars it was hardly necessary to put the controller on one point because they are four-motor cars and they generate their own current; that by the time he put the brake on, throwed it into emergency and throwed the reverse back, the corner of the fender, possibly about six inches, struck the plaintiff on the leg and knocked her back against the side of the car; that plaintiff was not over the

track far enough for the arm of the fender to protect her to keep her from rolling off from the side of the car; that his car was going, at the time, about six or eight miles an hour, and the car was under perfect control; that the car was lighted before starting and saw lights in the car immediately after the accident. The day was clear and it was not dark at the time of the accident at 5.47 o'clock P. M.

Joseph S. Latimer, the conductor of the car, testified that he turned the lights on the car before proceding towards the city by switch inside of the car, which lighted the headlights and the lights in the ceiling of the car, and he could see unlighted objects a distance of 200 yards, and it was not dark at the time of the accident.

The witnesses Cremier, Butt, Poss and Bowman each testified in effect that the car was lighted before and after the accident, and there was nothing to obstruct one's vision looking to north or south from Friendship Heights and that it was daylight at the time of the accident and objects the size of a man could be seen from 400 to 500 feet away.

Upon the facts we have stated and upon the other evidence, set out in the record, we are unable to hold that the Court below committed an error in refusing to grant the defendant's prayers, withdrawing the case from the consideration of the jury.

It is well settled by a long line of decisions of this and other Courts, that in no case ought the Court to take the question of negligence from the jury unless the conduct of the plaintiff relied upon as amounting in law to contributory negligence is established by clear and uncontradicted evidence and when the nature of the act relied on to establish contributory negligence can only be determined by considering all the circumstances attending the transaction, it is within the province of the jury to pass upon and characterize it and it is not for the Court to determine its quality as a matter of law. *United Rwys. Co.* v. *Dean,* 117 Md. 700; *Ziehm* v. *United*

*Electric,* 104 Md. 60; *C. and P. Tel. Co.* v. *Carey,* 124 Md. 536; *Burke* v. *M. & C. C. of Balto.,* 127 Md. 560.

In *B. & O. R. R. Co.* v. *Hendricks,* 104 Md. 84, it was said: "It is true there was evidence adduced by the defendant from which the jury, if they credited it, might have concluded that the motorman recklessly ran into a visible danger, but with that evidence we have nothing to do in considering the prayers now under review. The jury alone were authorized to weigh the evidence which was conflicting and their finding is not subject to revision by this Court. If we were at liberty to consider it, it is not improbable that a conclusion would be reached, founded on the theory of concurrent negligence, quite opposite of that arrived at by the jury. But in no case ought the Court to take the case of negligence from the jury unless the conduct of the plaintiff relied on as amounting in law to contributory negligence is established by clear and uncontradicted evidence. It is for the jury to determine the credibility of testimony; and if the evidence offered by the plaintiff in an action is such that if believed by the jury they may lawfully find for the plaintiff, the case cannot be withdrawn from their consideration although the plaintiff's evidence is contradicted in material particulars by that of the defendant." *W. M. R. R.* v. *Kehoe,* 86 Md. 50; *Heinz* v. *B. & O. R. Co.,* 113 Md. 593.

It is not necessary to review the many cases in which the questions of negligence and contributory negligence have been considered, nor the well established principles upon which they have been decided by this Court.

We have carefully examined and considered the evidence set out in the record, and while the questions presented are not free from difficulty, we are of the opinion that the case, under the evidence, was one for the consideration of the jury, upon proper instructions from the Court.

There was no exception reserved at the trial to the question sought to be raised in what the Court has designated as state-

ment No. 6, and the question is not, therefore, properly before us for consideration.

The seventh bill of exceptions was to the ruling of the Court in overruling a motion for a new trial. The granting or refusing a new trial is a matter resting in the discretion of the trial Court, and its action thereupon is not the subject matter of review upon appeal to this Court. *City Passenger R. R. Co.* v. *Sewell,* 35 Md. 238; *Archer* v. *State,* 45 Md. 457.

No Federal question was raised or considered in passing upon the question of the liability of the Washington Railway and Electric Company, because of the Federal citizenship of that company, and there was no error committed by the Court below in overruling the motion to set aside the verdict and grant a new trial for the reasons alleged and stated in the seventh bill of exception.

The eighth bill of exception presents the ruling of the Court, in granting a motion of *ne recipiatur,* and refusing to receive and consider the defendants' motion in arrest of judgment, and directing it to be stricken from the records. The verdict in the case, it will be seen, was rendered on the 25th of April, 1919, and the motion in arrest of judgment was not filed until July 30th, 1919.

Under Sections 9 and 10 of Rule 19 of the Circuit Court for Prince George's County, it is provided that all motions in arrest of judgment and for new trials shall be made within three days after the verdict, excluding the day upon which the verdict shall be found. Under this rule the motion in arrest of judgment was filed too late and was properly refused by the Court. *Hughes* v. *Jackson,* 12 Md. 450; *Gibbons* v. *Cherry,* 53 Md. 144; 15 *Corpus Juris,* p. 911, sec. 292 and note.

Finding no reversible error in the rulings of the Court, the judgment will be affirmed.

*Judgment affirmed, with costs.*