W. RUSSELL KRAUSE *v.* THE BALTIMORE AND
OHIO RAILROAD CO.

[No. 31, October Term, 1944.]

*Decided November 16, 1944.*

The cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, GRASON, MELVIN, BAILEY, CAPPER, and HENDERSON, JJ.

*Lester L. Barrett* and *Michael Paul Smith,* with whom were *Smith, Barrett,* and *Adelson, M. William Adelson,* and *John H. Fringer, Jr.,* on the brief, for the appellant.

*John S. Stanley* and *J. Sarsfield Sweeney,* with whom were *Hershey, Donaldson, Williams & Stanley* on the brief, for the appellee.

CAPPER, J., delivered the opinion of the Court.

The appellant brings this appeal from the Court of Common Pleas of Baltimore City by reason of the action of said Court in granting a motion of appellee for a judgment *non obstante veredicto* after a jury had rendered a verdict in favor of the appellant for $8,500.

Appellant, while driving alone in his automobile on the morning of November 12, 1941, received serious personal injuries by being struck by a Diesel engine of appellee at a railroad crossing on Ponca Street, a public highway in the City of Baltimore. He was traveling on this street in a southerly direction toward the crossing and was on his way to work at the time, which he fixed at a little

after six o'clock A. M. The crossing toward which he was traveling consisted of four tracks laid in said street at right angles. Appellant testified in his own behalf that he was familiar with these tracks and knew they were dangerous; that at the time of the accident it was dark, which he described as being cloudy and a little foggy that morning. There were no buildings or other objects to obstruct the view of this crossing.

The testimony discloses that there was a railroad crossing sign on the north side of these tracks approximately thirty-seven feet from the north rail of the northerly track, this being the track which the appellant was approaching; that Ponca Street at this point is paved and it is between twenty and twenty-one feet wide; that the distance from the north rail of the southerly track to the south rail of the track next to it is twenty-seven feet, and that the distance from the northerly rail of the southerly track to the northerly rail of the northerly track is approximately fifty-two feet.

It is further shown that there was a street light on an arm extending from a pole approximately on the east of Ponca Street at the track on which the Diesel engine was approaching from the southeast.

The evidence does not definitely show that the street light was burning, but it discloses that the circuit was turned off at 6.20 o'clock, leaving a presumption that the light was burning when the accident happened.

Appellant testified that he approached the crossing on the right lane of the street and had crossed in safety the first three tracks when in a matter of seconds a dark object approached on the last track from his left and collided with his automobile. He testified that he had his driving headlights burning at the time and that they gave light somewhat to the side but not much on his left; that his lights and brakes were in good condition; that his windows were closed with the exception of a ventilator window on his left side, being the driver's side. He further testified that when he reached a point about fifty feet from the most northerly track, he slowed down

to about ten miles an hour and looked and listened to his right and left; that this distance would be about one hundred feet from the track on which he was injured. He did not see or hear anything and started across the tracks, listening the whole way across until the accident happened upon the fourth track. He also testified that after he started across the tracks, he began to increase his speed from ten miles an hour but gave no estimate as to what the increase in speed amounted to.

At the time appellant was traveling toward these tracks, Carl Cornell, who was in charge of the experimental room at the Westinghouse Electric Company, engaged in secret government work, and for whom appellant worked, was on his way to work in his car and proceeded along said street about twenty feet or so behind the appellant. He stated that the accident happened a few minutes after six o'clock; that it was dark and quite foggy; that he had his headlights on and that other cars had their headlights on; that it was definitely dark. He proceeded in this manner for some three-quarters of a mile traveling at the rate of about twenty to twenty-two miles per hour behind the appellant. He also said that as he approached the railroad crossing, he looked for approaching trains and engines and was very careful, as a number of accidents had happened in that vicinity. When he was about seventy-five or eighty feet north of the first rail, he stated he looked both ways and there was no train in sight, no headlight, or any object at all. He had his windows half open and heard no signal given by any approaching train and no whistle, bell, or anything.

Both appellant and witness Cornell testified that their sight and hearing were normal at that time. Cornell further testified that he saw appellant apply the brakes for the first track and slow up and that witness also slowed up and kept on looking both ways for a train when, "the first thing I saw of the train was just when it started to push Russell's car, and I slammed on the brakes and pulled over to the side and jumped out and ran down the siding. There was no light burning on the

engine until after the engine stopped and then they turned the light on while they were getting Mr. Krause out of there. The scene of the accident was directly in front of my car and my headlights reflected on it and I first saw the engine when my headlights picked up the actual happening of the accident."

It is admitted by all parties to this cause that there were no gates over this crossing and no watchman or warning bell and never had been.

The absence of crossing gates under the circumstances in this case is not evidence of negligence, to which could be attributed this accident. We think the city law requiring crossing gates at this point is obsolete and that in any event appellant being fully familiar with the crossing did not require for his protection reliance upon crossing gates or watchmen. *Baltimore & O. R. Co. v. Mali,* 66 Md. 53, 5 A. 87; *State v. Maryland Electric Rys. Co.,* 124 Md. 434, 92 A. 961; *Baltimore & O. R. Co. v. Welch,* 114 Md. 536, 80 A. 170; *Pennsylvania R. Co. v. Yingling,* 148 Md. 169, 129 A. 36, 41 A. L. R. 398; *Buczkowski v. Canton R. Co.,* 181 Md. 377, 30 A. 2d 257.

As to the alleged neglect of appellee to sound any whistle or horn at this crossing, the employees of the train testified that the automatic bell was ringing and that horn and whistle were blown as was customary upon approaching a crossing. Both appellant and witness Cornell testified they were looking and listening for trains as they approached this crossing. While appellant's windows were closed, his ventilator window was open, which would assist him in hearing a whistle or bell of an approaching train.

Cornell testified the windows of his car were partly open and this should have enabled him to hear the approaching engine. Both knew of the dangerous condition of the crossing and they testified they were carefully approaching it and were looking and listening for trains. They testified positively that they did not hear any horn or whistle. It cannot be said as a matter of law that this was not some evidence at least to the effect that no such

signals were given. Their testimony is not comparable to that of witnesses in other cases who merely stated that they did not hear the signals given by approaching trains where the evidence showed they were not particularly interested in listening for signals.

We think the decisions of this Court hold that evidence such as that of appellant and Cornell concerning the absence of signals is evidence that such signals were not given. They were traveling at a slow rate of speed and there is no evidence showing any noise or other conditions in that vicinity which would prevent them from hearing. *Western Md. R. Co. v. Kehoe,* 86 Md. 43, 37 A. 799; *Northern Cent. R. Co. v. State to Use of Gilmore,* 100 Md. 404, 60 A. 19; *Heinz v. Baltimore & O. R. Co.,* 113 Md. 582, 77 A. 980; *Chairs v. Norfolk & W. R. Co.,* 151 Md. 679, 135 A. 827; *Lozzi v. Pennsylvania R. Co.,* 152 Md. 508, 137 A. 293; *State for Use of Emerson v. Baltimore & O. R. Co.,* 171 Md. 584, 190 A. 231.

It is shown by the record that on the day of this accident when Eastern Standard Time was in effect, twilight began at 5.12 A. M., and sunrise at 6.45 A. M. The appellant and witness Cornell both testified that it was somewhat cloudy and very foggy. The Weather Bureau report shows that it was cloudy but there was no fog. There is no other testimony to contradict the fact that it was cloudy or foggy excepting that of the engine crew, whose testimony was to the effect that there was a visibility of some five hundred to six hundred feet and that objects could be seen in the dimness of dawn. The evidence clearly shows that other automobiles traversing this street at the time of the accident had their headlights on and that the street lights were not turned off until 6.20 A. M., some ten minutes or more after the accident. The appellant and witness Cornell both swear positively that it was dark, and Cornell says it was definitely dark. Their testimony is definitely to the effect that there were no lights of any kind on the Diesel and that it moved so noiselessly they could not hear it. No evidence in the record shows that a Diesel engine moving under these circumstances would cause any considerable amount

of noise. The case is, therefore, different in this respect from an approaching engine and cars which would necessarily make considerable noise.

Appellee's witnesses in charge of this engine testified positively that the headlight and sidelights were burning. They further testified that it was light enough to use hand signals and it was unnecessary to have any lights at all upon the Diesel. They explained the presence of lights on the Diesel because of the fact that they had forgotten to turn them off. Witness Cornell testified that after the accident he was the first person on the scene and that the headlight of the Disel was turned on after that time.

We may lay on one side the absence of safety gates and crossing watchman. The Court, however, cannot say as a matter of law that there is no legally sufficient evidence to prove negligence on the part of the appellee in respect to its alleged failure to have the signals on the engine in use and to have its headlight burning at the time of the accident.

There is no doubt a high degree of care is required of all persons approaching railroad crossings to use every effort possible to guard against the danger of oncoming trains. If the view is obstructed, the law requires that the traveler must stop, look, and listen before going on the track. *Western Md. R. Co. v. Kehoe,* 86 Md. 43, 37 A. 799; *Glick v. Cumberland & W. Elec. R. Co.,* 124 Md. 308, 92 A. 778; *Pennsylvania R. Co. v. Yingling,* 148 Md. 169, 129 A. 36, 41, A. L. R., 398; *Baltimore & O. R. Co. v. Bruchy,* 161 Md. 175, 155 A. 346.

It is also well settled that when one who can see says he looked and listened but did not see or hear an object which, if he had really looked and listened, he must have seen or heard, the testimony is incredible and will not be believed by the Court. *Baltimore & O. R. Co. v. State to Use of Roming,* 96 Md. 67, 53 A. 672; *Phillips v. Washington & R. R. Co.,* 104 Md. 455, 65 A. 422, 10 Ann. Cas. 334; *Evans v. Baltimore C. & A. R. Co.,* 133 Md. 31, 104 A. 112.

The burden of proving contributory negligence is upon the appellee; and if this case had happened in daylight

or if there had been no contradiction that the headlight was burning or the bell ringing or horn blowing, the Court would have no difficulty in finding appellant guilty of contributory negligence as a matter of law.

Appellee cites the case of *Baltimore & O. R. Co. v. Goodman,* 275 U. S. 66, 72 L. Ed. 167, in support of its contention. The opinion in that case was written by Mr. Justice Holmes and held that it is negligence for one to attempt to drive an automobile over a railroad crossing with which he is familiar when his view of the track is obstructed if he does not stop and look, and, if necessary, leave the vehicle to make sure that the crossing is safe. This case, however, happened in the daylight and for that reason, alone is distinguishable from the case at bar.

In the case of *Pokora v. Wabash R. Co.,* 292 U. S. 98, 78 L. Ed. 1149, 91 A. L. R. 1049, the Supreme Court of the United States, stressing the fact that the burden of proof was on the defendant to make out the defense of contributory negligence, modified to some extent the Goodman Case. It held that to require a traveler to get out of his vehicle to ascertain whether a train is approaching is an uncommon precaution and very likely to be futile and sometimes even dangerous. It also added that the opinion in the Goodman Case has been a source of confusion in Federal Courts to the extent that it imposes a standard for application by the Judge and has had only wavering support in the Courts of the States.

This Court has had several occasions to deal with automobile crossing accidents that happened in the nighttime or at dawn. *Steever v. Union R. Co. of Baltimore,* 70 Md. 69, 18 A. 1032; *Western M. R. Co. v. Kehoe,* 86 Md. 43, 37 A. 799; *Taxicab Co. of Baltimore City v. Emanuel,* 125 Md. 246, 93 A. 807; *Washington & R. R. Co. v. Sullivan,* 136 Md. 202, 110 A. 478; *Chairs v. Norfolk & W. R. Co.,* 151 Md. 679, 135 A. 827; *Lozzi v. Pennsylvania R. Co.,* 152 Md. 508, 137 A. 293.

*Western M. R. Co. v. Kehoe,* supra, was a crossing case which happened on a dark night. Plaintiff testified that upon approaching the crossing, he slackened his speed and looked and listened and heard nothing and saw noth-

672

ing. The Court, affirming the judgment for the plaintiff, held that, "if the night was very dark, and there was no light in such a position as would enable the plaintiff to see the approaching car when he looked; and if no bell was rung, or other signal given,—he certainly was guilty of no negligence in attempting to cross the railroad track." [86 Md. 43, 37 A. 801.]

In the case of *Lozzi v. Pennsylvania R. Co.*, supra, Lozzi was driving his car at a moderate speed approaching a grade crossing in Hagerstown. When he was twenty-five feet from the track and had an unobstructed view, he looked and listened in both directions and continued to do so. He did not see or hear an engine until his car reached the nearest rail, where the accident happened.

The lower Court withdrew the case from the jury, which action was reversed by this Court, saying:

"But from the testimony of the plaintiff that he did not see, when driving in the night time, an engine coming from a direction in which he looked, it may be inferred that the darkness of the night made the engine invisible to a traveler on the street until it reached the crossing. There is no evidence tending to prove that the headlight of the locomotive was burning, and the opposite inference may be drawn from the testimony of the plaintiff that he did not see a headlight though he looked for, and discovered too late, the engine on which such a light, if displayed, could readily have been observed."

In the case before us, we have positive evidence on one side that there was no headlight or other light burning on the engine and that for this reason they did not see it. On the other, we have equally positive evidence that the headlight and side lights were burning, although, on account of the approaching daylight, it was not necessary to have either.

It was held in *Western Maryland R. Co. v. Kehoe*, supra, that: "The court cannot decide between opposing witnesses. The jury must determine questions of fact, and as said in [*Charleston Insurance &*] *Trust Co. v.*

*Corner,* 2 Gill, 427, 'no action of the Court should control the exercise of their admitted right to weigh the credibility of evidence.' "

In *Washington R. R. Co. v. Sullivan,* supra, the testimony for the plaintiff showed that the streetcar which struck the plaintiff had no lights burning and that it was dark. The testimony for the company was to the contrary.

The Court said in affirming a judgment for the plaintiff [136 Md. 202, 110 A. 480]:

"It is well settled by a long line of decisions of this and other courts, that in no case ought the Court to take the question of negligence from the jury unless the conduct of the plaintiff relied upon as amounting in law to contributory negligence is established by clear and uncontradicted evidence, and, when the nature of the act relied on to establish contributory negligence can only be determined by considering all the circumstances attending the transaction, it is within the province of the jury to pass upon and characterize it, and it is not for the Court to determine its quality as a matter of law."

When we come to consider the positive nature of the appellant's evidence as to the darkness of the morning, the absence of lights on the Diesel, and the blowing of the horn and whistle, it cannot be said that it is incredible for a jury to believe this testimony or that the testimony that appellant did not see or hear the approaching Diesel is unworthy of belief. Cases decided by this Court do not go to that extent in our opinion. Accordingly, we must reverse the action of the lower Court in giving a judgment *non obstante veredicto.* We accordingly, enter judgment for the appellant against the appellee for the amount of the verdict as found by the Jury in the amount of $8,500, with interest from the date of the verdict and costs.

> *Judgment reversed and judgment entered in favor of appellant against the appellee for $8,500 with interest from January 20, 1944, and costs above and below.*